IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOOMERANG RECOVERIES, LLC** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **GUY CARPENTER & COMPANY, LLC,** | : | NO. 16-0222 |
| **DAVID A. THOMAS, ERIC B. YEAGER and** | : | |
| **MARSH & MCLENNAN COMPANIES, INC.** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                          **April 21, 2016**

    Moving to remand this action, plaintiff Boomerang Recoveries, LLC ("Boomerang") contends removal was improper under the forum defendant rule, 28 U.S.C. § 1441(b)(2), because one of the defendants is a citizen of Pennsylvania where the action was originally filed. Marsh & McLennan Companies, Inc. ("MMC"), the defendant who removed the action, counters that removal was proper because we must disregard the citizenship of the sole forum state defendant, Eric Yeager, who was fraudulently joined in this action to invoke the forum defendant rule as a device to defeat removal.[1]

    We conclude that Yeager, a Pennsylvania citizen, was not fraudulently joined as a defendant. Consequently, removal violates the forum defendant rule. Therefore, we shall remand this action.

## Background

    Boomerang is in the business of reviewing reinsurance programs for insurance companies to identify overpaid premiums and underutilized claim recoveries. Guy

---

[1] In its motion to remand, Boomerang also contended that the removal petition was untimely because it was filed beyond the time limit set forth in 28 U.S.C. § 1446(c)(1), prohibiting removal more than one year after the action was commenced. At oral argument, counsel withdrew this argument. *See* Oral Arg. Tr. at 3:24-4:11.

Carpenter & Co., LLC ("Carpenter") is a reinsurance broker providing broking and advisory services to insurance companies seeking to purchase reinsurance. MMC is the sole member of Marsh USA, which is the sole member of Carpenter. David Thomas is a managing director of Carpenter. Eric Yeager is a senior vice president.[2]

This case arises out of a contract between Boomerang and non-party Farmers Insurance Co. of Flemington ("Farmers"). Boomerang agreed to review Farmers' reinsurance contracts from 2003 to 2013 to identify premiums which Farmers had been overcharged. Boomerang was to receive 35% of overcharges recovered as a result of Boomerang's review. The contract did not require Boomerang to identify any underpaid premiums Farmers owed to its reinsurers.

In reviewing Farmers' reinsurance contracts, Boomerang identified $2,246,014.65 in reinsurance premiums that Farmers had been overcharged. Boomerang cited errors made by Carpenter that resulted in Farmers paying higher premiums than were owed.[3]

Farmers submitted requests to Carpenter for reimbursements based on Boomerang's review. Carpenter, through which Farmers had purchased the reinsurance policies, was to submit the requests to the reinsurance carriers identified in Boomerang's review as having overcharged Farmers. Yeager and Thomas were the Carpenter employees assigned to manage the Farmers' account.[4]

Boomerang alleges that instead of immediately submitting the request for reimbursements to the participating reinsurance carriers, as they were contractually

---

[2] Compl. ¶¶ 2, 9; Fifth Am. Compl. ¶¶ 2, 29 n.20.

[3] Compl. ¶ 12; Fifth Am. Compl. ¶¶ 20-24.

[4] Compl. ¶¶ 7, 11, 15; First Am. Compl. ¶ 12.

required to do, Carpenter, Thomas and Yeager performed an internal audit of Farmers' reinsurance contracts for the 2003-2013 review period. This audit purportedly identified over two million dollars in premiums owed *by Farmers to* its *reinsurers*, effectively reducing Farmers' recovery and Carpenter's request for reimbursement from reinsurance carriers from $2,246,014.65 to $273,989.97.

Boomerang contends that Thomas and Yeager told Farmers that Boomerang had performed an incomplete review because it did not conduct a "net audit," which would have identified underpaid premiums Farmers owed to the reinsurers. Had Boomerang done so, the overcharges would have been offset by the underpayments. Boomerang alleges that Thomas and Yeager told Farmers that Boomerang's methods, calculations and findings were incorrect, improper and unethical.[5]

According to Boomerang, Carpenter had no justification for performing the audit and disputing Boomerang's findings. Yet, the defendants disparaged Boomerang and disputed its findings. Their goal was to reduce the amount Farmers had been overcharged in order to avoid both damage to Carpenter's reputation and the return of sales commissions. Boomerang claims that the "threat by Thomas and Yeager that Farmers owed over $2,000,000.00 in back premiums" induced Farmers not to pursue a substantial portion of the recoveries identified by Boomerang, causing Farmers to breach its agreement with Boomerang.[6]

Boomerang filed this action on December 9, 2014 in the Philadelphia Court of

---

[5] Compl. ¶¶ 12-14; Fifth Am. Compl. ¶ 31.

[6] Compl. ¶ 14-16, 25.

Common Pleas, naming as defendants Carpenter, Thomas and Yeager. In its initial complaint, Boomerang asserted a claim for tortious interference with a contractual relationship against Thomas and Yeager, and a claim for *respondeat superior* against Carpenter. In the counts against Thomas and Yeager, it alleged that they intentionally interfered with the contract between Boomerang and Farmers by falsely telling Farmers that it owed over two million dollars in underpaid premiums to reinsurers, causing Farmers to breach its agreement with Boomerang.[7] It also claimed that Thomas and Yeager, without privilege and justification, acted with the intention of preventing Farmers from getting paid for the purpose of avoiding damage to Carpenter's reputation and the need to refund sales commissions. As a direct result of Thomas and Yeager's "intentional and unjustified interference with Boomerang's contract," Boomerang claims it suffered damages in the amount of $786,105.13.[8]

In its claim against Carpenter, Boomerang alleged that Thomas and Yeager were "officers, directors, employees and/or agents" of Carpenter, and acted within the course and scope of their employment with Carpenter and in the furtherance of Carpenter's business "by protecting Carpenter's reputation, profits and commissions." As a result, Carpenter is vicariously liable for the conduct of Thomas and Yeager.[9]

Eight days after the initial complaint was filed, Carpenter removed the action, contending that it was removable because defendant Yeager, a citizen of the forum state, had not yet been served and had been fraudulently joined. Boomerang moved to remand.

---

[7] *Id.* ¶¶ 20, 24.

[8] *Id.* ¶¶ 21-26.

[9] *Id.* ¶¶ 28-30.

It argued that the forum defendant rule applied to defeat removal jurisdiction even though the forum defendant had not yet been served. Carpenter countered that Yeager had been fraudulently joined to avoid federal jurisdiction.

Three weeks after the case was removed, Carpenter filed a motion to dismiss the complaint for failure to state a claim. Yeager was served with process two days after the motion to dismiss was filed. He filed his own motion to dismiss, incorporating the grounds raised in Carpenter's motion. Boomerang responded by filing an amended complaint, mooting the motions to dismiss.

Two days later, we granted the motion to remand. Without reaching the fraudulent joinder issue, we held that we could not determine whether there was complete diversity between Boomerang and Carpenter because the citizenship of each of the members of the plaintiff limited liability company was not alleged.

Since the action was remanded, four amended complaints, each followed by either a stipulation to amend or preliminary objections, were filed. The second and third amended complaints contained no new claims, but the fourth amended complaint added a claim against Thomas and Yeager for commercial disparagement; a direct claim for tortious interference against Carpenter; and a direct claim and vicarious liability claim against Carpenter for commercial disparagement. The defendants filed preliminary objections, in response to which Boomerang filed a fifth amended complaint. This complaint added MMC as a party and asserted new claims. It included a direct and a vicarious liability claim against Carpenter for unfair competition and injunctive relief; a claim against Thomas and Yeager for unfair competition and injunctive relief; and a claim to pierce the corporate veil against MMC. All defendants, except MMC, filed preliminary

objections to the fifth amended complaint. MMC removed the instant action to federal court.[10] After the case was removed, the other defendants filed a motion to dismiss, reiterating their preliminary objections. MMC filed an answer to the fifth amended complaint. After moving to remand, Boomerang filed its sixth amended complaint, which all defendants have moved to strike.

## Fraudulent Joinder Analysis

The plaintiff is a Texas citizen. Carpenter and MMC are citizens of New York and Delaware. Thomas is a New Jersey citizen. Yeager is a Pennsylvania citizen. Thus, there is complete diversity because the plaintiff's citizenship is diverse from each defendant's citizenship.

Invoking the forum defendant rule, codified at 28 U.S.C. § 1441(b)(2), Boomerang argues that the action is not removable because defendant Yeager is a Pennsylvania citizen. That provision states that a civil action otherwise removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2).

MMC does not dispute that Yeager is a citizen of the forum. It argues, however, that Yeager's citizenship should be disregarded because he was fraudulently joined. Without Yeager as a defendant, so MMC contends, there is no forum defendant to prevent removal.

The removing party has a heavy burden of persuading a court that joinder is

---

[10] Because MMC did not list the action as "related" to the prior removed action, it was assigned to Judge Pratter. When it was learned that it was related, it was reassigned.

fraudulent. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (citation omitted). This heavy burden is imposed to effectuate the strong presumption against removal jurisdiction. *Id.* (quoting *Steel Valley Author. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)); *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009).

The doctrine of fraudulent joinder, an exception to the complete diversity requirement, permits a diverse defendant to remove the action if it can establish that a non-diverse defendant was fraudulently joined solely to defeat diversity jurisdiction. *JEVIC*, 575 F.3d at 326 (quoting *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006)). If the court finds that the non-diverse defendant was fraudulently joined, it may disregard the citizenship of the non-diverse defendant for the purpose of determining diversity of citizenship and dismiss the non-diverse defendant. *In re Briscoe*, 448 F.3d at 216 (citation omitted). On the other hand, if the court determines that joinder was not fraudulent, it must remand. *In re Briscoe*, 448 F.3d at 216 (citing 28 U.S.C. § 1447(c)).

Courts are split on whether a fraudulently joined diverse home state defendant may defeat removal. *Compare Yellen v. Teledyne Continental Motors, Inc.*, 832 F. Supp. 2d 490, 501-503 (E.D. Pa. 2011) (the fraudulent joinder doctrine can be applied to a diverse forum defendant), *Snider v. Sterling Airways, Inc.*, No. 12-cv-3054, 2013 WL 159813, at *3 n.6 (E.D. Pa. Jan. 15, 2013) ("fraudulent joinder principles also apply to joinder for purposes of invoking the forum defendant rule"), *Stiglich v. Chattem, Inc.*, No. 12-CV-1858, 2012 WL 5403437, at *2 (D.N.J. Nov. 5, 2012) (same), and *Henderson v. Jim Falk Motors of Maui, Inc.*, No. CIV. 14-00079, 2014 WL 3420773, at *2 (D. Haw. July 10, 2014) (fraudulent joinder can provide an exception to the forum defendant rule), *with Davenport v. Toyota Motor Sales*, 2009 WL 4923994 (S.D.Ill. Dec.14, 2009) (refusing to apply

fraudulent joinder doctrine to a diverse, in-state defendant); *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1059 (S.D. Ill. 2006) (same), and *Morris v. Nuzzo*, 718 F.3d 660, 668-71 (7th Cir. 2013) (declining to decide whether to extend the fraudulent joinder doctrine to diverse, in-state defendants, but cautioning that the costs of expanding the doctrine, such as an increased number of removal petitions filed in federal court, which conflicts with "long-established precedent that the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal courts," could "far outweigh the benefits," such as preventing plaintiffs from engaging "in what appears to be an exceptionally rare abusive pleading tactic" of using the forum defendant rule as a "'device' to defeat removal where an out-of-state defendant would otherwise have that right."). Because we conclude that Yeager was not fraudulently joined, we need not decide this question.

Joinder is fraudulent where there is no reasonable factual or "colorable" legal basis to support the claim against the non-diverse defendant or the plaintiff has no real intention of pursuing the action against that defendant. *In re Briscoe*, 448 F.3d at 216 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir.1985)). Any uncertainty as to the controlling substantive law is resolved in favor of the plaintiff. The possibility that the state court would find that the complaint states a cause of action against the non-diverse defendant requires remand. *JEVIC*, 575 F.3d at 326 (quoting *In re Briscoe*, 448 F.3d at 217). Unless the claim is "wholly insubstantial and frivolous," joinder will not be deemed fraudulent. *In re Briscoe*, 448 F.3d at 218 (quoting *Batoff*, 977 F.2d at 852). Thus, only where it is clear that the plaintiff cannot possibly recover from the non-diverse defendant will the joinder be deemed fraudulent.

The fraudulent joinder inquiry is less probing than the standard for deciding a Rule

12(b)(6) motion to dismiss or a summary judgment motion. *Batoff*, 977 F.2d at 852; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). In evaluating the alleged fraudulent joinder, we focus on the complaint at the time of removal, accepting the factual allegations as true. *JEVIC*, 575 F.3d at 326 (quoting *In re Briscoe*, 448 F.3d at 217). Nevertheless, we may look beyond the complaint, but only to the extent that it bears on the threshold jurisdictional inquiry. We do not conduct a merits inquiry. Nor can we consider the merits of a defense. *In re Briscoe*, 448 F.3d at 218 (citing *Boyer*, 913 F.2d at 112-13).

MMC contends that there is no "reasonable basis in fact" or "colorable ground" supporting any claim against Yeager because he cannot be held personally liable for the company's business decisions.[11] It argues that as a mere employee, not an *executive* officer or director, Yeager cannot be held individually liable. Without a viable claim against him, Yeager can no longer remain as a defendant. So, MMC argues, there is no home state defendant available to trigger the forum defendant rule.

As a general rule, an individual employee is not liable for business decisions made on behalf of the employer. *Wicks v. Milzoco Builders*, 470 A.2d 86, 90 (Pa. 1983) (citations omitted). However, corporate officers and directors who directed the tortious act or who participated in it may be individually liable. *Wicks*, 470 A.2d at 90. In other words, although corporate officers may not be held liable for mere nonfeasance, the omission of an act which a person ought to do, they may be liable for misfeasance, the improper performance of an act. *Shay v. Flight C Helicopter Servs., Inc.*, 822 A.2d 1, 17 (Pa. Super. 2003) (citing *Wicks*, 470 A.2d at 90). A corporate officer cannot hide behind the

---

[11] Br. in Opp'n to Mot. to Remand ("Opp'n Br.") at 12 (Doc. No. 15).

corporation when he has participated in the tort. *Donsco v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978).

In arguing that Yeager cannot be held individually liable, MMC makes several factual assertions. They are: (1) Yeager had no authority to direct the company's business operations; (2) he was a mid-level broker who did not participate in the tortious conduct alleged; (3) even if he were an *executive*, Yeager was "merely one member of a larger Carpenter LLC 'action team' assigned to the Farmers account . . . , [which claims] sound in mere *nonfeasance*."[12]

MMC's arguments are factual allegations made to support a defense. The jurisdictional inquiry does not permit us to consider the merits of the defendant's defenses, such as the business judgment rule, the extent of Yeager's authority at Carpenter or his level of participation in the tortious conduct. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *In re Adams Golf Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004)).

Boomerang has pled sufficient facts and asserted viable legal theories to support claims against Yeager. It has alleged that Yeager, as a vice president of Carpenter, not only participated and cooperated in the tortious acts, but actually led the team of Carpenter officers and directors who worked to convince Farmers to abandon its request for reimbursements, to drive a wedge between Boomerang and Farmers, and to put Boomerang out of business.[13] The fifth amended complaint describes how the team met and focused on undermining Boomerang's analysis and methodology.[14] Soon thereafter,

---

[12] Opp'n Br. at 27-29.

[13] Fifth Am. Compl. ¶¶ 29-30.

[14] *Id.* ¶ 30.

the Carpenter team told Farmers that Boomerang's findings were deliberately and knowingly misrepresented. As part of the strategy, the team fabricated underpaid premiums from casualty contracts from 2003 to 2007 to convince Farmers that it should not seek refunds based on Boomerang's findings.[15] Boomerang alleges that Yeager personally told Farmers that Boomerang was dishonest, acting unethically, and inducing Farmers to commit fraud.[16] Express language in the fifth amended complaint clearly states that Yeager knew what was happening. Thus, Boomerang has alleged that Yeager was an active participant, not an observer, engaging in tortious conduct.

While MMC concedes that the business judgment rule is a defense that cannot be considered on a motion to remand,[17] it maintains that the court is permitted to look outside the pleadings to consider its defense to the participation theory. Specifically, it proffers an affidavit from Carpenter's managing director describing Carpenter's corporate structure in order to "understand what is behind" Yeager's title of senior vice president and to show that Yeager lacked the "executive capacity to engage in misfeasance against Boomerang for purposes of applying the participation theory."[18]

The affidavit MMC proffers requires us to make factual determinations as to Yeager's decision-making authority and how that affected his level of participation in the alleged tortious conduct. Although we may look beyond the four corners of the complaint in making our fraudulent joinder determination, *Briscoe* cautions that we may not conduct

---

[15] *Id.* ¶¶ 31-32, 56, 94-96, 102-103.

[16] *Id.* ¶¶ 102-103.

[17] Oral Arg. Tr. at 32:1-33:10.

[18] *Id.* at 5:25-6:8, 7:7-8:8; Opp'n Br. at 27 (citing Decl. of Sandy Locke (Doc. No. 15-2)).

a merits inquiry or consider the merits of a defense. 448 F.3d at 217, 218. Additionally, a defendant's affidavit may not be considered in deciding a Rule 12(b)(6) motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 249, 250 (3d Cir. 2014). Because the fraudulent joinder inquiry is less probing than the standard for deciding a motion to dismiss, *Batoff*, 977 F.2d at 852, we do not consider the affidavit.

Viewing the factual allegations in the fifth amended complaint as true, we conclude that the factual and legal bases of Boomerang's claims are not "wholly insubstantial or frivolous." *See In re Briscoe*, 448 F.3d at 218. After conducting a limited inquiry beyond the four corners of the complaint and applying the presumption against removal, we find that Boomerang has stated colorable claims against Yeager.

MMC also argues that Boomerang has no good-faith intention to prosecute its claims against Yeager. It contends that the allegations in the fifth amended complaint focus on corporate rather than individual conduct and that the facts and claims asserted against Yeager are "a mere recitation of those against the company."[19] MMC argues that this evidences a lack of intent to actually prosecute its claims against Yeager.[20]

Boomerang argues that it has always intended to pursue individual claims against Yeager and his boss, Thomas. In its initial complaint, the plaintiff asserted a claim for tortious interference with contract against Thomas and Yeager. In subsequent complaints, the tortious interference claims against them remained. In addition, Boomerang points to the numerous allegations in the fifth amended complaint that Yeager not only participated

---

[19] Opp'n Br. at 23.

[20] *Id.* at 21.

and cooperated in the alleged tortious conduct, but actually directed the team's efforts in the misconduct. It contends that Yeager was the "main player."[21] Boomerang also points to the fact that it has "aggressively pursu[ed]" its claims against the individual defendants since the initial complaint was filed, including having taken extensive discovery of the defendants.[22]

MMC has failed to meet its burden to show that Boomerang lacks a good faith intention to prosecute its claims and pursue a judgment against Yeager. Considering the allegations that Yeager not only participated in the actions at the heart of Boomerang's claims, but initiated many of them and directed others at Carpenter to participate in them, we cannot conclude that Yeager was joined to this action as a mere "device" to defeat removal. Thus, MMC has failed to show that the joinder of Yeager was in bad faith or fraudulent.

## Conclusion

Because MMC has not shown that Yeager, a Pennsylvania citizen, was fraudulently joined, removal violates the forum defendant rule. Therefore, the case shall be remanded for lack of subject matter jurisdiction.

---

[21] Mem. of Law in Support of Mot. to Remand (Doc. No. 6-1) at 20.

[22] *Id.* at 3, 9.